UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

LUANN STEWART,

Plaintiff,

v.

PRESBYTERIAN HOMES AND SERVICES and GEORGE OBARA,

Defendants.

CIVIL NO. 00-2652 (DSD/JMM)

REPORT AND RECOMMENDATION

The above matter came on for hearing before the undersigned on April 18, 2001 upon Defendant Presbyterian Homes and Services' Motion to Dismiss or for Summary Judgment [Docket No. 12]. Donald Nichols, Esq. appeared on behalf of Plaintiff; David Hashmall, Esq. appeared on behalf of Defendant Presbyterian Homes and Services; Steve Boynton, Esq. appeared on behalf of Defendant Obara, who did not file any pleadings in connection with this Motion. The matter is before the undersigned Magistrate Judge for a Report and Recommendation to the District Court pursuant to the provisions of 28 U.S.C. §636 (b)(1)(B).

Upon the following Findings of Fact/Report, it is recommended that Defendant Presbyterian Homes and Services' Motion to Dismiss or for Summary Judgment [Docket No. 12] be denied.

**FINDINGS OF FACT/REPORT**

The following counts are alleged by Plaintiff against Defendant Presbyterian Homes and Services ("Presbyterian Homes") in the Complaint [Docket No. 1]: (1) sex discrimination pursuant to 42 U.S.C. §2000e-2 (Title VII); (2) sex discrimination pursuant

FILED MAY 08 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

to Minn. Stat. §363.03 (Minnesota Human Rights Act); (3) negligent supervision and retention; and (4) assault and battery. Presbyterian Homes moves to dismiss all counts of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. In the alternative, Presbyterian Homes seeks summary judgment against Plaintiff pursuant to Fed. R. Civ. P. 56. We first examine the Motion under the standards applicable to a Motion to Dismiss. We then examine the questions raised on the Motion for Summary Judgment. We conclude that neither dismissal nor summary judgment is appropriate on any of Plaintiff's claims against Presbyterian Homes.

## I. MOTION TO DISMISS

### Standard of Review

The Court of Appeals for the Eighth Circuit has recently explained the standard to be applied on a Rule 12(b)(6) motion as follows:

> When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party. A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief.
>
> Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity. To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions.

Young v. City of St. Charles, Missouri, 244 F.3d 623, 627 (8th Cir. 2001)(internal citations omitted). A motion to dismiss should only be granted "in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some

insuperable bar to relief." Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995)(citations omitted)(holding dismissal appropriate where complaint gives "no idea what acts the individual defendants are accused of that could result in liability").

A. **Federal Sex Discrimination (Count I)**

Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . ." 42 U.S.C. §2000e-2(a). "Such discriminatory harassment includes conduct so 'severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment.'" Robinson v. Valmont Indus., 238 F.3d 1045, 1047 (8th Cir. 2001)(quoting Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998))(alteration in original). A claim based upon such conduct is referred to as a "hostile work environment" claim.

To prevail on a hostile work environment claim, a party must show "(1) [she] is a member of a protected class; (2) unwelcome harassment occurred; (3) there is a causal nexus between the harassment and [her] protected-group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) [the employer] knew or should have known of the harassment and failed to take prompt and effective remedial action." Robinson, 238 F.3d at 1047 (citation omitted).

The Complaint in this action contains sufficient allegations of violations of 28 U.S.C. §2000e-2 to survive Defendant's Motion to Dismiss. The fact that Plaintiff is female, and therefore a member of a protected class, is not disputed. The Complaint alleges that unwelcome harassment occurred on August 25, 2000, when George Obara, an employee

of Presbyterian Homes and a co-defendant in this action, made unwanted physical advances toward Plaintiff. ¶¶ 9, 10.[1] Obara's actions were sexually motivated. ¶ 10. The harassment caused Plaintiff to take a leave of absence from her job, and ultimately to quit. ¶¶ 14, 15, 19. Presbyterian Homes had received prior reports of similar behavior by Obara and failed to take remedial action. ¶ 13, 19. These allegations state a Title VII claim.

Defendant notes that in paragraph 12 of the Complaint, Plaintiff alleges that after she reported the August 25 incident to Presbyterian Homes she "was told that Obara would be immediately suspended until an investigation could be conducted." Defendant contends that this allegation contradicts the allegation that the employer failed to take prompt corrective action, especially because the employee was in fact fired when the investigation was concluded. We examine the facts surrounding the timing and propriety of the employer's response in greater detail in our consideration of the alternative Motion for Summary Judgment. In examining the sufficiency of the allegations in the Complaint, we conclude that the allegation as to a conversation concerning a temporary response to the conduct at issue does not undermine the adequacy of the allegations.

**B. Minnesota Human Rights Act (Count II)**

The elements of a sex discrimination claim under the Minnesota Human Rights Act (the "MHRA") are virtually identical to those for a federal sex discrimination claim. In fact, the legal analysis for an MHRA claim is identical to that for a Title VII claim. Moss v. Advance Circuits, Inc., 981 F. Supp. 1239, 1245 (D. Minn. 1997)(citations omitted).

---

[1] References are to paragraphs in the Complaint.

In order to prevail against an employer on a sex discrimination claim under the MHRA, a plaintiff must show that: (1) unwelcome conduct occurred; (2) the conduct consisted of "sexual advances, requests for sexual favors, sexually motivated physical contact or other verbal or physical conduct or communication of a sexual nature"; (3) the conduct was sufficiently pervasive so as to substantially interfere with the plaintiff's employment or create a hostile, intimidating or offensive work environment; and (4) the employer knew or should have known of the harassment and failed to take timely and appropriate action. Cummings v. Koehnen, 568 N.W.2d 418, 424 (Minn. 1997)(citing Minn. Stat. §363.01, subd. 41).

The same allegations in the Complaint that state a claim under Title VII also state a claim under the MHRA. See also ¶ 26. Plaintiff alleges that Obara made unwelcome sexual advances toward her, causing her to leave her job. She alleges that Presbyterian Homes knew of Obara's propensity for harassment and failed to respond properly. These allegations are sufficient to survive Defendant's Motion to Dismiss the MHRA claim.

### C. Negligent Retention and Supervision (Count III)

To prevail on a claim of negligent retention, a plaintiff must show that the employer (1) knew or should have known that an employee posed a threat, and (2) failed to take remedial measures to ensure the safety of others. McKenzie v. Lunds, Inc., 63 F. Supp.2d 986, 1005 (D. Minn. 1999)(citations omitted). "[A] viable claim of negligent retention requires the existence of at least a threat of, or reasonable apprehension of, physical injury." McKenzie, 63 F. Supp.2d at 1005 (citations omitted). Plaintiff has met this requirement because "[e]mployment based sexual harassment involves enough of a threat of a physical injury to permit a negligent retention claim." Grozdanich v. Leisure Hills

Health Ctr., Inc., 25 F. Supp.2d 953, 980-81 (D. Minn. 1998)(citations omitted). See also Longen v. Federal Express Corp., 113 F. Supp.2d 1367, 1375 (D. Minn. 2000)(alleged groping and physical restraint sufficient to raise factual issue as to plaintiff's reasonable apprehension of physical injury). An employer may be held liable under a theory of negligent retention whether or not the employee acted outside the scope of his employment. McKenzie, 63 F. Supp.2d at 1006 (citations omitted).

To prevail on a claim of negligent supervision, a plaintiff must show that the employer failed to "exercise ordinary care in supervising the employment relationship, so as to prevent the foreseeable misconduct of an employee from causing harm to others." McKenzie, 63 F. Supp.2d at 1006 (citation omitted). Because negligent supervision evolved from the doctrine of *respondeat superior*, "liability can only be based upon a tort that was committed within the employee's scope of employment." McKenzie, 63 F. Supp.2d at 1006.

1. Claims adequately pled.

The Complaint in this action states a claim for both negligent retention and negligent supervision. Plaintiff alleges that, prior to the August 25, 2000 incident, Presbyterian Homes had received reports of improper behavior by Obara. ¶13. She alleges that formal complaints were lodged regarding Obara's behavior, and Presbyterian Homes failed to take remedial action. ¶13. These allegations are sufficient to state claims for negligent retention and supervision of Obara. See Mandy v. 3M, 940 F. Supp. 1463, 1471 (D. Minn. 1996)(both claims adequately pled where plaintiff alleged that employer became aware of employee's alleged unfitness and failed to take remedial action).

2. Plaintiff's negligence claims are not preempted by the MHRA.

Presbyterian Homes argues that Plaintiff's negligent retention and negligent supervision claims are preempted by the MHRA, based upon the statute's exclusivity provision, Minn. Stat. §363.11. That section provides that the MHRA shall be the exclusive remedy for acts declared unfair by the MHRA. Not all negligence claims arising from the same underlying facts and seeking the same damages are barred by the MHRA. Grozdanich, 25 F. Supp.2d at 981; see also Vaughn v. Northwest Airlines, Inc., 558 N.W.2d 736, 745 (Minn. 1997)(plaintiff may maintain MHRA and negligence claims arising from same set of facts). But see Breitenfeldt v. Long Prairie Packing Co., Inc., 48 F. Supp.2d 1170, 1180 (D. Minn. 1999)(MHRA barred common law claims where plaintiff did not allege separate factual predicate). The issue for the Court is whether the common law claim is founded upon a duty of care that is different than the duty specified by the MHRA, in which case both claims may proceed. Grozdanich, 25 F. Supp.2d at 981 (citation omitted).

Different stages of employer knowledge exist with respect to harassment by an employee: when the employer did not and should not have known; when the employer did not but should have known; and when the employer in fact did know. Common law negligence claims are preempted if they arise solely from actions taken by an employer after it is in fact aware of alleged discriminatory behavior, because under those circumstances the employer's duty is identical under both the common law and the MHRA standards. Grozdanich, 25 F. Supp.2d 953, 981 (D. Minn. 1998)(at moment employer was informed that employee had assaulted plaintiff, employer's statutory duty - to take timely and appropriate remedial action - necessarily subsumed corresponding common law duties to take remedial measures and to use ordinary care in supervising workplace); see also

Moss, 981 F. Supp. 1239, 1252 (D. Minn. 1997).

The question of whether Presbyterian Homes is liable for its negligence, if any, prior to having actual knowledge of the August 25, 2000 assault is less clear. The Minnesota Supreme Court has not spoken on the issue. Two unreported decisions of the Minnesota Court of Appeals appear to be in disagreement. Compare Huffman v. Pepsi-Cola Bottling Co., 1995 WL 434467 (Minn. Ct. App. July 25, 1995)(negligent retention/supervision claims not preempted by MHRA), with Wise v. Digital Equipment Corp., 1994 WL 664973 (Minn. Ct. App. Nov. 29, 1994)(negligent supervision claim for failure to exercise due care to prevent sexual assault preempted because identical to MHRA claim).

Plaintiff asserts that her negligent retention and supervision claims arise from an independent duty of Presbyterian Homes to provide a reasonably safe working environment for its employees. In considering an employer's duties absent actual knowledge of sexual harassment, there is some conceptual overlap between the common law duty to use reasonable care in ensuring the safety of the workplace and the statutory duty to take preventative measures so as to preclude harassment in the workplace. Grozdanich, 25 F. Supp.2d at 981-82. However, in Grozdanich, the Court concluded that the wiser course would be to allow the negligent employment claims premised on the employer's failure to take measures to prevent the harassment to proceed. The Court based its decision on the "fairly nebulous quality" of the employer's common law and statutory duties, and the fact that Minnesota courts had not decisively spoken on the issue. Grozdanich, 25 F. Supp.2d at 982. We agree with the reasoning in Grozdanich, and conclude that it would be inappropriate to dismiss Plaintiff's negligent retention and supervision claims at this time.

### D. Assault and Battery (Count IV)

Under Minnesota law, "[a]n assault is a threat to do bodily harm to another which the present ability to carry out the threat. . . . A battery is an intentional, unpermitted, offensive contact with another." Adewale v. Whalen, 21 F. Supp.2d 1006, 1016 (D. Minn. 1998)(citations omitted). Presbyterian Homes does not dispute that the description of Obara's behavior in the Complaint meets the elements of claims for assault and battery.[2]

## II. MOTION FOR SUMMARY JUDGMENT

Having concluded that dismissal of the Complaint is not appropriate, we turn to the question of whether Presbyterian Homes' Motion for Summary Judgment should be granted as to any of Plaintiff's claims.

### Standard of Review

"Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Lynn v. Deaconess Medical Ctr., 160 F.3d 484, 486 (8th Cir. 1998); Fed R. Civ. P. 56(c). In Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986), the Supreme Court described the importance of the summary judgment procedure:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' . . . Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and

---

[2] Presbyterian Homes' argument that vicarious liability cannot be imposed against it for Obara's actions is discussed later in this Report in connection with the Motion for Summary Judgment.

> defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

On a Motion for Summary Judgment, the moving party has the initial burden of establishing the "material facts" and demonstrating that there is not a "genuine" dispute as to whether those material facts are true. Celotex, 477 U.S. at 322-323. To defeat the motion, the opposing party must then establish that there is a "genuine" issue as to material facts. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

In this case, Presbyterian Homes made its Motion for Summary Judgment very early, combining it with a Motion to Dismiss. By following this process, Defendant was not required to file an Answer to the Complaint, nor to make the pre-discovery disclosures required by Rule 26(a)(1) of the Federal Rules of Civil Procedure. We have determined that the Motion to Dismiss is not well founded. Under these unusual procedural circumstances, the Court must be particularly cautious about reaching the conclusion that there are and will be no facts which would warrant a jury finding in favor of the Plaintiff.

**A. Facts**

For purposes of deciding Presbyterian Homes' Motion for Summary Judgment, we turn to the affidavits and documents submitted by the parties to further identify the facts underlying this case.

On August 25, 2000, during the early morning hours, Plaintiff returned from a dinner break with nurse assistant Obara. Stewart Aff., ¶ 6. As they walked up the stairs of the Presbyterian Homes building, Obara grabbed Plaintiff's arm and pinned her against the wall. Bumann Aff., Ex. A. Plaintiff told Obara to let her go, but he continued to restrain her and attempted to kiss her. Bumann Aff., Ex. A. Obara was touching Plaintiff and rubbing against her in a sexual manner. Bumann Aff., Ex. A. After several minutes, Plaintiff was able to pull loose and return to work. Bumann Aff., Ex. A.

Approximately four hours later, at the end of their shift, Obara asked Plaintiff for a ride home. Stewart Aff., ¶ 7. Plaintiff was afraid he might try to assault her again. Stewart Aff., ¶ 7. Plaintiff reported the assault by Obara to the Orono police department on August 27, 2000, and to her supervisor at Presbyterian Homes on August 28, 2000. Stewart Aff., ¶¶ 8, 9. Obara was suspended on August 28, 2000 and fired on August 31, 2000. Anderson Aff., ¶ 5; Brun Aff., ¶ 6.

Obara had been involved in an incident with a different female employee on January 9, 2000. Odeen Aff., Ex. B. The employee claimed to have been physically assaulted by Obara. Presbyterian Homes investigated the incident and concluded that Obara was not at fault. Hanson Aff., ¶ 4. In addition, on January 12, 2000, a female Presbyterian Homes employee filed a complaint of improper sexual conduct by Obara, an allegation which Obara denied. Anderson Aff., ¶ 8.

At some time prior to the incident between Plaintiff and Obara, a group of nurses (including Plaintiff) had met with the nursing supervisor at Presbyterian Homes to discuss harassment problems at the facility. Stewart Aff., ¶10. Plaintiff submitted an Affidavit of Mona Myrlie, a licensed practical nurse at Presbyterian Homes. Ms. Myrlie avers that she has been sexually harassed by a male nursing assistant during her tenure

at Presbyterian Homes. Myrlie Aff., ¶ 2. She reported the incident to her supervisor, but no remedial action was taken. Myrlie Aff., ¶ 2.[3]

Two female nurses submitted an "Ideas for Improvement" form to management on August 16, 2000 regarding harassment at Presbyterian Homes. Odeen Aff., Ex. C. The nurses stated that sexual harassment of nurses by nursing assistants was a continuing problem at the facility that was not being addressed. They also stated that the sexual harassment problem was the subject of constant discussion among the female staff.

In response to the August 16, 2000 complaint, a supervisor spoke on August 21, 2000 to one of the women who had made the complaint. She suggested that Tracy Plante, a licensed practical nurse at Presbyterian Homes, might have further information. Brun Aff., ¶ 4. On August 24, 2000, Ms. Plante told a supervisor that she had been harassed by Obara on August 12, 2000. She stated that he had touched her hair, asked her out, and come up behind her and put his arm around her, despite the fact that she had told him she was not interested in dating him. Anderson Aff., ¶ 3.

Plaintiff took a two-month leave of absence from her nursing job beginning on October 23, 2000, and quit before her leave expired. The formal reason Plaintiff stated for requesting a leave of absence from Presbyterian Homes was "training for a job in another line of work." Williamson Aff., Ex. A. However, Presbyterian Homes' failure to stop the ongoing harassment was a controlling factor in Plaintiff's decision to leave. Supp.

---

3

Plaintiff also alleges that, in 1996, she was assaulted by a male nurse assistant. Stewart Aff., ¶¶ 2, 3. She reported the incident to her supervisor, and was told to trade shifts if she was uncomfortable working with that employee. Stewart Aff., ¶ 5. The employee failed to appear at a meeting to discuss the incident, and was fired. Hanson Aff., ¶ 9.

Stewart Aff., ¶ 4. Plaintiff's fear of being subjected to further harassment made the environment at Presbyterian Homes too stressful for her to continue working there. Supp. Stewart Aff., ¶ 6.

**B. Sexual Harassment (Counts I and II) and Negligent Supervision and Retention (Count III)**

Presbyterian Homes makes three general arguments in support of its Motion for Summary Judgment as to Counts I, II, and III of the Complaint.[4] Presbyterian Homes argues that summary judgment is appropriate on Plaintiff's claims because: (1) it could not have known that a danger of sexual harassment existed at its facility; (2) it fired Obara within days of learning of the August 25, 2000 incident; and (3) Plaintiff left her employment with Presbyterian Homes to pursue a career as a flight attendant. Presbyterian Homes' Motion should not be granted, because genuine issues of fact exist as to each of these points.

The Court's analysis is colored in part by the fact that Presbyterian Homes has made this Motion for Summary Judgment far earlier in the proceeding than such a motion would ordinarily be before the Court. Whereas motions to dismiss are used to test the sufficiency of the pleadings, summary judgment is designed to be employed after discovery has been taken, to dispose of cases completely lacking in factual support by looking beyond the allegations in the pleadings. See In re Buffets Security Litigation, 906 F. Supp. 1293 (D. Minn. 1995). Here, the Motion for Summary Judgment is made even before an Answer has been filed, and before the Defendant has made the pre-discovery disclosures required by Rule 26(a)(1). The Court's inquiry should be "whether the evidence

---

[4] Presbyterian Homes' fourth argument, that it cannot be held vicariously liable for the torts allegedly committed by Obara, is discussed in a separate section.

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251.

The evidence does show that, promptly after it learned of Obara's conduct of August 25, 2000, Presbyterian Homes terminated his services. According to Presbyterian Homes, this fact is determinative on the issue of whether it acted promptly and effectively to curtail the harassment. If the only question were whether Presbyterian Homes had responded promptly and effectively to the August 25 incident, Presbyterian Homes' interpretation could well be correct. However, the question of proper employer response relates not only to the single assault on August 25, but to the general atmosphere of harassment that is alleged to have existed at Presbyterian Homes for some time prior to August 25.

The facts alleged, viewed in the light most favorable to Plaintiff, raise a question of fact as to whether Presbyterian Homes should have known prior to the August 25 incident that Obara and others posed a danger to other employees. The Affidavits state that there had been a continuing and pervasive problem of harassment of female nurses by male nursing assistants. The nursing staff had communicated the general problem, as well as specific incidents, to supervisors both orally and through a written complaint form. Obara himself had been accused of sexual and non-sexual assault by two different female employees in January 2000. A finder of fact could reasonably conclude that Presbyterian Homes was or should have been aware of the sexual harassment prior to August 25, 2000, and that Presbyterian Homes was required to take remedial action prior to that date.

Presbyterian Homes also argues that Plaintiff cannot allege that she was constructively discharged from her nursing job, because she stated at the time that her reason for leaving was to attend flight attendant school. We conclude that a genuine

question exists as to the reason for Plaintiff's departure from Presbyterian Homes. Plaintiff states that she felt forced to leave because of the hostile environment and her fear of being assaulted and/or harassed. The fact that Plaintiff listed training for a new career as a reason for requesting a leave of absence does not resolve the issue. It is certainly possible that Plaintiff was driven to pursue a different career by the conditions at Presbyterian Homes.

C. **Vicarious Liability for Assault and Battery (Count IV)**

Presbyterian Homes argues that it is entitled to summary judgment on Plaintiff's claims for assault and battery because it cannot be held vicariously liable for Obara's alleged misconduct. Presbyterian Homes argues that it cannot be held liable for Obara's actions because Obara was not acting within the scope of his employment when the alleged assault occurred. We conclude that a question of fact remains as to whether or not Obara's actions were within the scope of his employment.

It is well established that, under the principle of *respondeat superior*, "an employer is vicariously liable for the torts of an employee committed within the course and scope of employment." Fahrendorff v. North Homes, Inc., 597 N.W.2d 905, 910 (Minn. 1999)(citations omitted). "An employee acts within the scope of his employment when (1) the source of the attack is related to the duties of the employee and (2) the assault occurs within the work related limits of time and space." Longen, 113 F. Supp.2d at 1371 (citing Lange v. Nat'l Biscuit Co., 211 N.W.2d 783, 786 (Minn. 1973)). Under Minnesota law, "where sexual assaults by employees in a particular profession are a foreseeable risk of that profession, a sexual assault may be considered 'related to' the employee's duties." Longen, 113 F. Supp.2d at 1371 (citations omitted).

The issue of whether sexual assault is foreseeable within a profession should not be confused with the issue (for negligence purposes) of whether sexual assault was a foreseeable risk with respect to a particular employee. See Longen, 113 F. Supp.2d at 1372. Rather, the Court should consider "whether the overall nature of the employer's business and the employee's duties are such that, as a policy matter, vicarious liability for intentional torts is a 'foreseeable cost of doing business.'" Longen, 113 F. Supp.2d at 1372 (citations omitted). See also Fahrendorff, 597 N.W.2d at 911 (actions may have been within scope of employment where source of attack lay in activity directly related to legitimate counseling duties).

The employee's motivation is not relevant to the scope of employment analysis. Fahrendorff, 597 N.W.2d at 910 (citations omitted). "[A]n employee's act need not be committed in furtherance of his employer's business to fall within the scope of his employment." Fahrendorff, 597 N.W.2d at 910 (citations omitted). For example, in Marston v. Minneapolis Clinic of Psychiatry and Neurology, 329 N.W.2d 306 (Minn. 1982), the court held that a question of material fact existed as to whether or not sexual misconduct by a psychologist with several patients fell within the scope of his employment. While the court noted that sexual contact with patients served absolutely no therapeutic purpose and was strictly forbidden by the employer and by the Code of Ethics of the American Psychological Association, the court also found that the misconduct would not have occurred but for the psychologist's employment and took place following normal therapy sessions. Marston, 329 N.W.2d at 311. "[J]ust because an employee's ultimate actions may be motivated by personal gratification and prohibited by the employer does not mean that those actions fall outside the scope of employment as a matter of law." Fahrendorff, 597 N.W.2d at 911 (citation omitted).

The question of whether physical or sexual assault is a "foreseeable risk" of a certain profession does not have an obvious answer. The issue is generally considered to raise a question of fact, making it an issue not ripe for resolution on a pre-trial motion. See Grozdanich, 25 F. Supp.2d at 978 ("The foreseeability, and the relation to the scope of employment, of an employee's intentional tort is a question of fact, ordinarily suited to resolution by a Jury."). See also Fahrendorff, 597 N.W.2d at 911; Marston, 329 N.W.2d 306. Although expert evidence concerning the foreseeability of sexual assault in a particular profession is not required, the presence or absence of such evidence may be a crucial factor. Longen, 113 F. Supp. at 1373 (citations omitted). See also P.L. v. Aubert, 545 N.W.2d 666, 668 (Minn. 1996)(finding no forseeability of sexual assault because "[w]hile it is true that teachers have power and authority over students, no expert testimony or affidavits were presented regarding the potential for abuse of such power in these situations; thus there can be no implied forseeability."); Marston, 329 N.W.2d at 311 (court was influenced by testimony to the effect that "sexual relations between a psychologist and a patient is a well-known hazard and thus, to a degree, foreseeable and a risk of employment.").

In addition to the fact that the "scope of employment" question is generally one of fact rather than law, at this early stage in the proceedings, there is no evidence in the record upon which the Court could base a decision regarding the foreseeability of assaults within the health care industry. On a summary judgment motion, "the movant must discharge the burden the Rules place upon him: It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case." Celotex, 477 U.S. at 328 (White, J. concurring). See also Ashe v. Corley, 992 F.2d 540, 543 (5th Cir. 1993)("even when the

non-movant bears the burden of proof at trial, simply filing a summary judgment motion does not immediately compel the party opposing the motion to come forward with evidence demonstrating material issues of fact as to every element of its case.")(citations omitted); United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 n. 19 (11th Cir. 1991)("In this circuit, '[e]ven after Celotex, it is never enough simply to state that the non-moving party cannot meet its burden at trial.")(citation omitted).

The Court is left with a case where the record contains no evidence to support or negate the position of either side as to whether or not Obara's actions were within the scope of his employment. Under these circumstances, summary judgment is not appropriate.

## RECOMMENDATION

For the reasons set forth above, it is recommended that Defendant Presbyterian Homes and Services' Motion to Dismiss or for Summary Judgment [Docket No. 12] be denied.

Dated: May 8, 2001

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **May 23, 2001** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **May 23, 2001**.